Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES ALBRECHT,<br><br>             Plaintiff,<br><br>     vs.<br><br>AVALARA, INC., BRUCE CRAWFORD,<br>ROBIN FOOTE, EDWARD GILHULY,<br>BILL INGRAM, MARCELA MARTIN,<br>SCOTT MCFARLANE, TAMI RELLER,<br>BRIAN SHARPLES, RAJEEV SINGH,<br>SRINIVAS TALLAPRAGADA and<br>KATHY ZWICKERT,<br><br>             Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities<br>       Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities<br>       Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, James Albrecht ("Plaintiff"), by and through his attorneys, alleges upon

information and belief, except for those allegations that pertain to him, which are alleged upon

personal knowledge, as follows:

<u>**SUMMARY OF THE ACTION**</u>

1.      Plaintiff brings this stockholder action against Avalara, Inc. ("Avalara" or the

"Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,"

and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a)

of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

to sell the Company to Lava Intermediate, Inc., an affiliate of Vista Equity Partners, through merger vehicle Lava Merger Sub, Inc. ("Merger Sub" and collectively with Parent, "Vista") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 8, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Avalara's common stock will be converted into the right to receive $93.50 in cash, without interest.

3.      Thereafter, on August 23, 2022, Avalara filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in

favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Avalara, provided by Avalara management to the Board and the Board's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Goldman Sachs, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of Texas and, at all times relevant hereto, has been an Avalara stockholder.

8.      Defendant Avalara together with its subsidiaries, provides cloud-based solutions for transaction tax compliance worldwide. Avalara is incorporated in Washington and has its principal place of business at 255 South King Street, Suite 1800, Seattle, WA 98104.  Shares of Avalara common stock are traded on the New York Stock Exchange under the symbol "AVLR".

9.      Defendant Bruce Crawford ("Crawford") has been a Director of the Company at all relevant times.

10.      Defendant Robin Foote ("Foote") has been a director of the Company at all relevant times.

11.      Defendant Edward Gilhuly ("Gilhuly") has been a director of the Company at all relevant times.

12.     Defendant Bill Ingram ("Ingram") has been a director of the Company at all relevant times.

13.     Defendant Marcela Martin ("Martin") has been a director of the Company at all relevant times.

14.     Defendant Scott McFarlane ("McFarlane") has been a director of the Company at all relevant times.  McFarlane also serves as the Company's Chief Executive Officer ("CEO").

15.     Defendant Tami Reller ("Reller") has been a director of the Company at all relevant times.

16.     Defendant Brian Sharples ("Sharples") has been a director of the Company at all relevant times.

17.     Defendant Rajeev Singh ("Singh") has been a director of the Company at all relevant times.

18.     Defendant Srinivas Tallapragada ("Tallapragada") has been a director of the Company at all relevant times.

19.     Defendant Kathy Zwickert ("Zwickert") has been a director of the Company at all relevant times.

20.     Defendants identified in ¶¶ 9 - 19 are collectively referred to as the "Individual Defendants."

21.     Non-Party Vista is private equity fund with over $96 Billion in assets under management.

22.     Non-Party Merger Sub is a wholly owned subsidiary of Vista created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to

confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court

has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.     Personal jurisdiction exists over each defendant either because the defendant

conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over defendant by this Court permissible under

traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the

Individual Defendants, as Company officers or directors, has extensive contacts within this

District; for example, the Company's stock trades on the New York Stock Exchange which is

headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

26.     Avalara, Inc. together with its subsidiaries, provides cloud-based solutions for

transaction tax compliance worldwide. The company offers a suite of compliance solutions that

enable businesses to address the complexity of transaction tax compliance; process transactions in

real time; produce detailed records of transaction tax determinations; and reduce errors, audit

exposure, and total transaction tax compliance costs. The company's solutions include AvaTax, a

solution for determining sales tax in the United States; Avalara Compliance Cloud Returns for tax

return preparation, filing, and remittance; which creates, validates, stores, and manages sales tax exemption. It also provides professional services, including nexus studies and back filing services, voluntary compliance initiatives, tax registrations, reverse audits, audit defense, and specialized tax research. The company was formerly known as Advantage Solutions, Inc. and changed its name to Avalara, Inc. in December 2005. Avalara, Inc. was incorporated in 1999 and is headquartered in Seattle, Washington.

27.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the May 5, 2022 press release announcing its 2022 Q1 financial results, the Company highlighted total revenue of $204.5 million and gross profit of $144.4 million.

28.     Speaking on the positive results, CEO Defendant McFarlane said, "We started 2022 with another strong quarter, exceeding our guidance and achieving topline revenue growth of 33% year-over-year," …... "Mounting complexity in today's digital-first world is pushing global demand for compliance automation. We continue to execute our strategy to build the global cloud compliance platform to achieve our vision of being part of every transaction in the world."

29.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Avalara.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

30.     Despite this upward trajectory, the Individual Defendants have caused Avalara to enter into the Proposed Transaction without providing requisite information to Avalara stockholders such as Plaintiff.

*The Flawed Sales Process*

31.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32.     Notably, the Preliminary Proxy Statement fails to disclose whether a committee of disinterested directors was formed to oversee and evaluate the Proposed Transaction, and if so, what powers the committee had in doing so, including whether the committee had the power to veto a transaction that is not in the best interest of common shareholders.

33.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Vista, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

34.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

35.     On August 8, 2022, Avalara and Vista issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SEATTLE, WA — August 8, 2022 — Avalara, Inc. (NYSE: AVLR)**, a leading provider of tax compliance automation for businesses of all sizes, today announced it has entered into a definitive agreement to be acquired by Vista Equity Partners ("Vista"), a leading global investment firm focused exclusively on enterprise software, data, and technology-enabled businesses, in partnership with institutional co-investors.

Under the terms of the agreement, Vista will acquire all outstanding shares of Avalara common stock for $93.50 per share in an all-cash transaction valued at $8.4 billion, inclusive of Avalara's net debt. The per share purchase price represents a premium of 27 percent over the Company's closing share price as of July 6, 2022, the last trading day prior to media reports regarding a potential transaction.

Founded in 2004, Avalara's success is built up on an extensive partner network; large tax content data and repository to help customers stay up to date on dynamic tax rules and regulations; and its cloud-native, end-to-end multi-product tax compliance portfolio. In partnering with Vista, Avalara will look to build on its successful platform by refining its go-to-market strategy, expanding its international workforce, streamlining its systems architecture, and continuing to pursue value-accretive M&A opportunities.

"For nearly two decades, Avalara has ambitiously pursued its vision to automate global compliance, making tax less taxing for businesses and governments around the world. As a leader in this category, we believe our continued investment in innovation and experience is exciting for our customers, partners, and employees. We are pleased to partner with Vista and will benefit from their expertise in enterprise software as we build and improve upon our cloud compliance platform," said Scott McFarlane, co-founder and CEO of Avalara.

"Vista has built a reputation as a preferred partner for founder-led, next-generation software companies," said Monti Saroya, Co-Head of Vista's Flagship Fund and Senior Managing Director. "We look forward to working with Scott and the entire Avalara team to advance their vision and continue delivering innovative solutions to customers."

"Avalara is a mission-critical platform serving customers in a variety of end-markets, including retail, manufacturing, hospitality, and software," said Adrian Alonso, Managing Director at Vista. "Avalara's solutions, its commitment to product innovation, and its network of extensive partner integrations, resellers, and accountants make it a true leader in the space."

**Transaction Details**

The transaction, which was unanimously approved by the Avalara Board of Directors, is expected to close in the second half of 2022, subject to customary closing conditions, including approval by Avalara shareholders and receipt of regulatory approval. Closing of the transaction is not subject to a financing condition.

Upon completion of the transaction, Avalara's shares will no longer trade on the New York Stock Exchange, and Avalara will become a private company. The company will continue to operate under the Avalara name and brand.

### *Potential Conflicts of Interest*

36.     The breakdown of the benefits of the deal indicate that Avalara insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Avalara.

37.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Name of Beneficial Owner | Shares | % |
|---|---|---|
| **Named Executive Officers and Directors:** | | |
| Scott McFarlane | 1,045,851 | 1.2% |
| Ross Tennenbaum | 32,997 | * |
| Amit Mathradas | 74,354 | * |
| Alesia Pinney | 31,338 | * |
| Bruce Crawford | 1,145 | * |
| Marion Foote | 473,573 | * |
| Edward Gilhuly | 224,270 | * |
| William Ingram | 99,504 | * |
| Marcela Martin | 809 | * |
| Tami Reller | 73,294 | * |
| Brian Sharples | 5,535 | * |
| Rajeev Singh | 17,761 | * |
| Srinivas Tallapragada | 1,145 | * |
| Kathleen Zwickert | 3,777 | * |
| All executive officers, directors, and director nominees as a group (14 persons) | 2,085,353 | 2.3% |
| **5% Shareholders:** | | |
| BlackRock, Inc. | 6,816,020 | 7.8% |
| Franklin Resources, Inc. | 4,468,961 | 5.1% |
| The Vanguard Group | 7,578,910 | 8.6% |
| Wellington Management Group LLP | 6,808,931 | 7.8% |

38.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger

consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Preliminary Proxy Statement fails to account for these awards.

39.     In addition, certain employment agreements with certain Avalara executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Golden Parachute Compensation**

| Named Executive Officer | Cash($) | Equity($) | Perquisites / Benefits($) | Total($) |
|---|---|---|---|---|
| Scott McFarlane | $1,393,750 | $29,117,488 | $  24,062 | $30,535,299 |
| Ross Tennenbaum | $  730,313 | $11,985,865 | $  26,522 | $12,742,699 |
| Alesia Pinney | $  620,250 | $  5,863,051 | $  22,696 | $  6,505,997 |
| Amit Mathradas | $1,040,563 | $13,065,002 | $    9,723 | $14,115,288 |
| Total | $3,784,875 | $60,031,405 | $  83,003 | $63,899,283 |

40.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41.     Thus, while the Proposed Transaction is not in the best interests of Avalara, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

42.     On August 23, 2022, the Avalara Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

43.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.   Whether a committee of disinterested directors was formed in order to evaluate the Proposed transaction and if so, what powers it had in doing so;

b.   Whether the confidentiality agreements entered into by the Company with Vista differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

c.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including The Consortium, would fall away; and

d.   Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Avalara's Financial Projections*

44.    The Preliminary Proxy Statement fails to provide material information concerning financial projections for Avalara provided by Avalara management to the Board and Goldman Sachs and relied upon by Goldman Sachs in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

45.    Notably the Preliminary Proxy Statement reveals that as part of its analyses, Goldman Sachs reviewed, "certain internal financial analyses and forecasts for the Company prepared by its management" prepared by Company management.

46.    The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Avalara management provided to the Board and Goldman Sachs.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

47.    With regard to the *Financial Projections* prepared by Avalara, the Preliminary Proxy Statement fails to disclose material line items, including the following:

   a.    With regard to the *May Projections* prepared by Avalara, the Preliminary Proxy Statement fails to disclose material line items, including the following:

      i.    Non-GAAP Gross Profit, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically: gross

profit, the effects of stock-based compensation expense, and amortization of acquired intangible assets; and

    ii. Non-GAAP Operating Income (Loss), including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically: operating income (loss), the effects of stock-based compensation expense, and amortization of acquired intangible assets.

b. With regard to the *July Projections* prepared by Avalara, the Preliminary Proxy Statement fails to disclose material line items, including the following:

    i. Non-GAAP Gross Profit, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically: gross profit, the effects of stock-based compensation expense, and amortization of acquired intangible assets; and

    ii. Non-GAAP Operating Income (Loss), including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically: operating income (loss), the effects of stock-based compensation expense, and amortization of acquired intangible assets; and

    iii. Unlevered Free Cash Flow including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically: Estimated cash taxes, the effect of utilization of state and federal net operating losses ("NOLs"), depreciation and amortization, capital expenditures, change in deferred revenues, other changes in net working capital, Stock Based Compensation expense, and the effect of utilization

of NOLs;

iv.  Net Operating Losses, including all underlying inputs, metrics, and assumptions used to calculate this metric.

48.  The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49.  This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50.  Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Goldman Sachs's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

51.  In the Preliminary Proxy Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52.  With respect to the *Illustrative Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose:

a.  The inputs, metrics, and assumptions used to determine discount rates ranging from 11.50% to 15.50%;

b.  The Company's weighted average cost of capital;

c.  The range of terminal values calculated;

d.  The inputs, metrics, and assumptions used to determine perpetuity growth rates ranging from 2.0% to 4.0%;

e.  The terminal year estimate of the unlevered free cash flow to be generated by the company;

f.  The value of stock based compensation expense;

g.  Avalara's target capital structure weightings;

h.  The Company's cost of long-term debt;

i.  The  after-tax yield on permanent excess cash for the Company;

j.  The Company's future applicable marginal cash tax rate;

k.   The beta for the Company;

l.  The value of estimated benefits of Avalara's net operating losses;

m.  The range of illustrative enterprise values for Avalara;

n.  The Company's net debt;

o.  A definition for the Company's "debt like items" as well as the values of each included metric encompassing the term;

p.  The balance of the Company's unrestricted Cash;

q.  The range of illustrative equity values derived for the Company; and

r.  The number of fully diluted outstanding shares of Company stock.

53.  With respect to the *Illustrative Present Value of Future Share Price Analysis*, the

Preliminary Proxy Statement fails to disclose:

     a. The implied enterprise values for Avalara as of December 31 for each of the fiscal years 2022 to 2024;

     b. The inputs, metrics, and assumptions necessary to determine a range of EV/NTM revenue multiples of 6.5x to 9.5x;

     c. The Company's total debt;

     d. A definition for the Company's "debt like items" as well as the values of each included metric encompassing the term;

     e. The Company's unrestricted cash;

     f. The value of the Company's Cash equivalents as of December 31 for each of the fiscal years 2022 to 2024;

     g. The projected year-end number of fully diluted outstanding shares of Avalara's common stock for each of the fiscal years 2022 to 2024;

     h. The projected estimated amount of annual dilution regarding the Company's stock;

     i. The current number of fully diluted outstanding shares of Avalara's common stock;

     j. The range of implied future equity values per share derived;

     k. The inputs, metrics, and assumptions used to determine an illustrative discount rate of 13.75%; and

     l. The beta for the Company.

     54. With respect to the *Selected Transactions Analysis*, the Preliminary Proxy Statement fails to disclose:

a.   The value of each transaction compared;

b.   The specific date on which each transaction closed;

c.   The inputs, metrics, and assumptions used to determine a reference range of EV/NTM revenue multiples of 7.0x to 12.0x;

d.   The range of illustrative equity values for Avalara;

e.   The number of fully diluted outstanding shares of Avalara's common stock;

f.   Avalara's total debt

m.   A definition for the Company's "debt like items" as well as the values of each included metric encompassing the term; and

g.   The amount of Avalara's unrestricted cash and cash equivalents as of June 30, 2022.

55.   With respect to the *Selected Public Company Comparables Analysis*, the Preliminary Proxy Statement fails to disclose:

a.   The specific metrics for each company compared; and

b.   The EV/NTM revenue multiple range selected as well as the inputs, metrics, and assumptions used to determine that range.

56.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

57.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Avalara stockholder.

As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

58.     Plaintiff repeats all previous allegations as if set forth in full herein.

59.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

60.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

61.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62.      The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63.      The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

64.      The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

65.      The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

66.     Plaintiff repeats all previous allegations as if set forth in full herein.

67.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

68.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

69.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Avalara's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

70.     The Individual Defendants acted as controlling persons of Avalara within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Avalara to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Avalara and all of its employees.  As alleged above, Avalara is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.


Dated: September 1, 2022                 **BRODSKY & SMITH**

                              By:  */s/ Evan J. Smith*
                                   Evan J. Smith
                                   240 Mineola Boulevard
                                   Mineola, NY  11501
                                   Phone:  (516) 741-4977
                                   Facsimile (561) 741-0626

                                   *Counsel for Plaintiff*